EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Amarilis Betancourt González<br><br>Peticionarias<br><br>v.<br><br>Dwight Pastrana Santiago<br><br>Recurrido | Certiorari<br><br>2018 TSPR 68<br><br>200 DPR ____ |

Número del Caso: AC-2015-71

Fecha: 23 de abril de 2018

Tribunal de Apelaciones:

       Región Judicial de Carolina-Fajardo

Abogado de la parte peticionaria:

       Lcdo. Iván De Jesús Marrero

Abogado de la parte recurrida:

       Lcdo. Roberto Bonano Rodríguez

Materia: Derecho de Familia: Improcedencia de ordenar la venta en pública subasta de bienes pertenecientes a una comunidad de bienes post ganancial sin que previamente se haya ordenado la liquidación de la comunidad aludida.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

Amarilis Betancourt González

    Peticionaria

      v.                            AC-2015-0071

Dwight Pastrana Santiago

    Recurrido

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico a 23 de abril de 2018.

En el presente caso nos corresponde resolver si el Tribunal de Apelaciones, -- dentro del contexto de un pleito de divorcio, y previo a que se ordenara la liquidación de una comunidad de bienes post ganancial -- abusó de su facultad revisora al ordenar la venta en pública subasta de determinados bienes pertenecientes a la mencionada comunidad para satisfacer cierta deuda que tiene uno de los ex cónyuges con el otro, en virtud de un acuerdo de estipulación alcanzado entre las partes con el propósito de ponerle fin al presente litigio.

Por entender que el foro apelativo intermedio abusó de su discreción, contestamos dicha interrogante en la afirmativa. Veamos.

I.

Los hechos medulares no están en controversia. El señor Dwight Pastrana Santiago (en adelante "señor Pastrana Santiago") y la señora Amarilis Betancourt González (en adelante "señora Betancourt González"), estuvieron casados bajo el régimen de sociedad legal de bienes gananciales hasta el 12 de noviembre de 2009, fecha en la cual, mediante sentencia de divorcio en el caso número **NSRF2010-00620**, se decretó roto y disuelto el vínculo matrimonial entre ambos. Como resultado de dicho proceso, el señor Pastrana Santiago mantuvo el control total de la **comunidad de bienes post ganancial** que nació en ese momento. La señora Betancourt González, por su parte, y entre otras cosas, -- a la luz de un acuerdo de estipulaciones habido entre las partes y hasta que se dividiera la comunidad compuesta por estos -- recibiría la cantidad de $2,500.00 mensuales por concepto de anticipos de la participación de esta última en la referida comunidad de bienes post ganancial. Asimismo, las partes acordaron que el total de anticipos entregados a la señora Betancourt González sería descontado de su participación en la referida comunidad en el momento en que la misma fuese liquidada. Acogidas las estipulaciones en cuestión por el Tribunal de Primera Instancia el 26 de octubre de 2010[1],

---

[1] En el presente caso, a pesar de que las partes habían obtenido una sentencia de divorcio, el litigio en el que se encontraban no había llegado a su fin, pues faltaba por disponer de los bienes habidos durante el matrimonio. En ese entonces, y en lo relacionado a la comunidad de bienes post ganancial que surgió como consecuencia del divorcio, las partes acordaron -- mediante estipulaciones acogidas por el Tribunal -- que el señor Dwight Pastrana Santiago le pagaría a la señora Amarilis

dicho foro ordenó que se uniera el expediente del caso **NSRF2010-00620** con el del caso **NSCI2010-00541,** pleito sobre liquidación de bienes gananciales que, entre las mismas partes, tambien se celebraba en el Tribunal.

Así las cosas, años más tarde, el señor Pastrana Santiago incumplió con su obligación de pagar los anticipos acordados, por lo que la señora Betancourt González solicitó, en múltiples ocasiones, y ante el foro primario, que se le encontrara a este último incurso en desacato. En oposición, el señor Pastrana Santiago alegó que la comunidad de bienes post ganancial no contaba con la liquidez necesaria para satisfacer los anticipos acordados entre ambos.

Evaluados los planteamientos de ambas partes, y luego de determinar que la comunidad de bienes post ganancial tenía la capacidad económica para pagar lo estipulado, el Tribunal de Primera Instancia acogió el planteamiento de la señora Betancourt González y, en consecuencia, le impuso varias sanciones al señor Pastrana Santiago. No obstante, luego de múltiples planteamientos de derecho por parte de este último, el foro primario emitió una *Resolución* mediante la cual dejó sin efecto las referidas sanciones, por entender que las mismas eran contrarias a derecho. Ello, tras concluir que el

---

Betancourt González ciertos anticipos por concepto de su participación en la comunidad de bienes post ganancial. Así pues, en ese momento, la referida estipulación sustituyó una relación jurídica incierta en la que el señor Pastrana Santiago mantenía el control de la totalidad de los bienes post gananciales. Mediante recíprocas prestaciones (el señor Pastrana Santiago mantendría el control de la comunidad de bienes post ganancial y la señora Betancourt González recibiría ciertos pagos por concepto de anticipos de su participación en la misma), las partes pusieron fin a **un incidente dentro del pleito** que en esos momentos estaba ante la consideración del Tribunal.

procedimiento adecuado para exigir el cumplimiento con las estipulaciones pactadas entre el señor Pastrana Santiago y la señora Betancourt González era el mecanismo de ejecución de sentencia, mas no el de desacato. En la referida *Resolución*, el foro primario ordenó la consolidación del caso **NSRF2010-00620** con el **NSCI2010-00541** sobre liquidación de bienes gananciales.

Inconforme con tal determinación, la señora Betancourt González acudió, por primera vez, al Tribunal de Apelaciones. Ante dicho foro, esta alegó que el Tribunal de Primera Instancia había errado al concluir que el mecanismo de desacato no era el método adecuado para hacer valer las estipulaciones acordadas entre esta y el señor Pastrana Santiago. A dicha solicitud, el señor Pastrana Santiago se opuso.

Examinados los alegatos presentados por las partes, el Tribunal de Apelaciones dictó Sentencia. Al así hacerlo, confirmó al Tribunal de Primera Instancia, ello por entender que la ejecución de sentencia es el mecanismo adecuado para exigir el cumplimiento de las estipulaciones pactadas en el caso ante nos. Además, reconoció que, a pesar del pleito encontrarse consolidado con el pleito de liquidación de bienes post ganancial, el foro primario no estaba impedido de "*remedialmente [atender] este asunto en particular bajo las consideraciones y los mecanismos antes mencionados*". *Véase*, Apéndice de *Certiorari*, págs. 101-105.

Así pues, y de conformidad con lo resuelto por el Tribunal de Apelaciones, la señora Betancourt González presentó una moción en el caso **NSRF2010-00620**, consolidado por orden del Tribunal con el caso **NSCI-2010-00541**, en el cual solicitó la ejecución de la *Resolución* que acogió las estipulaciones de las partes.[2] En su solicitud, esta alegó que el señor Pastrana Santiago sólo había realizado el pago de nueve (9) de los plazos acordados.

Evaluada la solicitud de la señora Betancourt Pastrana, el Tribunal de Primera Instancia, dentro del pleito de divorcio, emitió una orden para la venta en pública subasta de la participación indivisa del cincuenta por ciento (50%) que le correspondía al señor Pastrana Santiago en cierta propiedad, ubicada en la urbanización Paseo Real, de San Juan, P.R., perteneciente a la comunidad de bienes post ganancial. De la venta no ser suficiente para satisfacer la deuda acumulada, el foro primario señaló que autorizaría la venta en pública subasta de la participación del señor Pastrana Santiago en otra propiedad perteneciente a la comunidad de bienes post ganancial ubicada en la urbanización

---

[2] Es menester señalar que, a pesar de que se ordenó la consolidación de los pleitos y que se uniera el expediente del pleito de divorcio con el de liquidación de comunidad bienes post ganancial, los asuntos se siguieron atendiendo en salas separadas del Tribunal de Primera Instancia. **Tomamos conocimiento judicial de que, luego de un sinnúmero de trámites procesales no necesarios aquí pormenorizar, el 9 de marzo de 2017, notificada el 10 de marzo del mismo año, el Tribunal de Primera Instancia emitió una Sentencia en el caso NSCI-2010-00541 de liquidación de comunidad de bienes post ganancial, mediante la cual dispuso que "*se dicta sentencia de paralización para fines estadísticos en espera de decisión del Tribunal Supremo en relación a esta controversia. Una vez advenga final y firme el dictamen del Tribunal Supremo, la demandante deberá en 10 días presentar una moción para que continúen los procedimientos en el caso de marras*".** (Énfasis suplido)

Solimar, en Luquillo, P.R. Asimismo, resolvió que, al 5 de noviembre de 2014, el señor Pastrana Santiago le adeudaba a la señora Betancourt González la suma de $100,000.00 por concepto de los anticipos de su participación.

Insatisfecho con dicha determinación, el señor Pastrana Santiago acudió al Tribunal de Apelaciones. Ante dicho foro, a pesar de reconocer haber realizado el pago de solo nueve (9) de los plazos acordados, alegó que el foro primario erró al determinar que este le adeudaba la suma de $100,000.00 a la señora Betancourt González. Ello, pues a su juicio, tal deuda era inexistente, al tratarse de un adelanto de participación y no de una pensión de alimentos ex cónyuge.

De otra parte, este señaló también que el Tribunal de Primera Instancia erró al ordenar la venta en pública subasta de su participación en las dos propiedades de la comunidad de bienes post ganancial, a pesar de haberse estipulado que cada una de ellas sería ocupada por las partes en el pleito, hasta que se dividiera la comunidad de bienes post ganancial. Así pues, argumentó que lo que procedía era que se ordenara la ejecución de la participación de la señora Betancourt González en la comunidad de bienes post ganancial. Lo contrario, a su entender, ocasionaría un enriquecimiento injusto a favor de la señora Betancourt González.

Evaluados los alegatos de las partes, el Tribunal de Apelaciones dictó sentencia mediante la cual revocó el

dictamen del foro primario.[3] Al así hacerlo, el foro apelativo intermedio determinó que ordenar la venta en pública subasta de la participación del señor Pastrana Santiago en una propiedad de la comunidad de bienes post ganancial, tal como lo hizo el Tribunal de Primera Instancia, ocasionaría un enriquecimiento injusto a favor de la señora Betancourt González. Ello, pues al ambos ser miembros de la comunidad post ganancial, cada uno tiene cincuenta por ciento (50%) de participación sobre la totalidad de la comunidad. En consecuencia, y de forma distinta a lo resuelto por el foro primario, ordenó que el Tribunal de Primera Instancia valorara la totalidad de las propiedades en la comunidad de bienes post ganancial y, una vez valoradas, ordenara la venta en pública subasta del cien por ciento (100%) de la misma, para luego dividir las ganancias en partes iguales.

Inconforme con dicho proceder, la señora Betancourt González acude ante nos. En su recurso, en esencia, señala como error que la sentencia dictada por el foro apelativo intermedio estaba en conflicto con la primera determinación tomada por el Tribunal de Apelaciones en el presente caso, en la cual se resolvió que las determinaciones del foro primario sobre las estipulaciones entre las partes eran ejecutables solo mediante el procedimiento de ejecución de

---

[3] Es preciso señalar que, tanto la señora Betancourt González como el señor Pastrana Santiago, reconocieron que el edicto de subasta de la propiedad objeto del presente litigio contiene un error respecto a un gravamen hipotecario de $148,000.00. En consecuencia, el foro apelativo intermedio dejó sin efecto la Orden para la venta en pública subasta y el edicto de subasta que señalaba la venta. No obstante, dicho foro optó por discutir en los méritos los errores planteados por el señor Pastrana Santiago.

sentencia. Ello, pues al ordenar la venta de la totalidad de los bienes post gananciales y no conceder la ejecución de la *Resolución*, dejaba sin efecto la determinación previa del mismo foro. Oportunamente, el señor Pastrana Santiago presentó su alegato en oposición.

Trabada así la controversia, y contando con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

Como es sabido, en cuanto al régimen económico patrimonial que regirá durante el matrimonio, el Código Civil de Puerto Rico establece que, a falta de capitulaciones matrimoniales válidas, el régimen económico patrimonial supletorio es la sociedad legal de bienes gananciales. *Muñiz Noriega v. Muños Bonet*, 177 DPR 967 (2010); *SLG Báez-Casanova v. Fernández*, 193 DPR 192 (2015); *Montalván v. Rodríguez*, 161 DPR 411 (2004). Bajo este régimen, los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno. *SLG Báez-Casanova v. Fernández*, *supra*; *Roselló Puig v. Rodríguez Cruz*, 183 DPR 81 (2011); *Montalván v. Rodríguez*, *supra*. Es decir, "*la masa ganancial está compuesta por bienes y derechos, que [,] estando directa e inmediatamente afectos al levantamiento de las cargas familiares, son de titularidad conjunta de los cónyuges sin especial atribución de cuotas*". Joaquín J. Rams Albesa, *La Sociedad de Gananciales,* Madrid, Ed. Tecnos, S.A., 1992, pág. 28. Disuelta la sociedad legal de bienes gananciales, como consecuencia del divorcio de las

partes unidas en matrimonio, es que los cónyuges hacen suyos por mitad las ganancias o los beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio. Art. 1295 del Código Civil, 31 LPRA sec. 3621; *Muñiz Noriega v. Muñoz Bonet*, 177 DPR 967, 982 (2010). *Véase*, además, *Montalván v. Rodríguez*, *supra*.

Ahora bien, sabido es que, aunque el divorcio conlleva la terminación del régimen de la sociedad legal de bienes gananciales, la liquidación del capital común entre ex cónyuges no siempre ocurre simultáneamente con la disolución del matrimonio. En muchos casos sobreviene un periodo en que se mezclan y confunden provisionalmente los bienes de los ex cónyuges hasta que se liquida finalmente la **comunidad de bienes post ganancial** que se crea entre ellos una vez ocurre el divorcio. *BL Investment Inc. v. Registrador*, 181 DPR 5 (2011); *Muñiz Noriega v. Muñoz Bonet*, *supra*; *Montalván v. Rodríguez*, *supra*.

Precisa señalar aquí que, esta comunidad de bienes post ganancial que se crea con la disolución del matrimonio, no es propiamente una comunidad en mano común o germánica en cuanto al patrimonio global, pues cada comunero tiene una cuota y puede solicitar su división. *Pagán Rodríguez v. Registradora*, 177 DPR 522, 532 (2009) *citando a* R.M. Roca Sastre y L.R. Roca-Sastre Muncunill, *Derecho Hipotecario*, 8va ed. rev., Barcelona, Ed. Bosch, 1995, T. VI, esc. 122, pág. 162. Sus comuneros ostentan "*una cuota abstracta sobre el totum ganancial o sobre la masa, y no una cuota concreta*

*sobre cada uno de los bienes"*. *Muñiz Noriega v. Muñoz Bonet,*
*supra, pág. 983; Pagán Rodríguez v. Registradora, supra, pág.*
531. **Es decir, los comuneros no tienen una cuota sobre cada**
**bien determinado, sino que poseen una cuota independiente,**
**alienable y homogénea sobre la masa patrimonial con el**
**derecho a intervenir en la administración de los bienes**
**comunes y a pedir su división.** *Montalván v. Rodríguez, supra,*
págs. 421–422. *Véase,* además, *Pagán Rodríguez v.*
*Registradora, supra; Vega v. Tossas,* 70 DPR 392 (1949).

A tenor con ello, hemos reconocido que cada cónyuge
puede vender, ceder o traspasar sus derechos y acciones sobre
la masa de la comunidad previo a su liquidación final, "*mas*
*no puede disponer por sí mismo de bienes de la comunidad, o*
*cuotas determinadas y específicas de éstos debido a que*
*la comunidad se gobierna por el 'régimen de mayorías para la*
*gestión y de unanimidad para los actos de disposición'".* *BL*
*Investment, Inc. v. Registrador, supra,* pág. 15, *citando a*
LaCruz Berdejo, *Elementos de Derecho Civil,* 4ta ed.,
Barcelona, Ed. Bosch, 1997, T. IV, págs. 353–354. *Véase,*
además, *Alameda v. Registrador,* 76 DPR 230 (1954). Sobre el
particular, en *BL Investment Inc. v. Registrador, supra,* pág.
24, señalamos lo siguiente:

> [L]a comunidad postganancial como sucesora de la
> sociedad de gananciales tiene unas características
> propias y que a pesar de que sus comuneros cuentan
> con una cuota, esta no recae sobre cada bien, sino
> sobre la totalidad de la masa otrora ganancial. Por
> lo tanto, la aplicación de las disposiciones de
> la comunidad de bienes ordinaria se circunscribe a
> aquello compatible con la naturaleza de

la comunidad postganancial. **Por ello, el embargo de la participación del comunero debe atenerse a las particularidades de la comunidad postganancial, esto es, al interés del comunero en la masa y no en un bien específico.** (Énfasis suplido)

En fin, durante la vigencia de la comunidad de bienes post ganancial, ninguno de los ex cónyuges puede tener control total sobre ella. Al respecto, el Art. 328 del Código Civil, 31 LPRA sec. 1273, dispone que "*[c]ada partícipe podrá servirse de las cosas comunes, siempre que disponga de ellas conforme a su destino y de manera que no perjudique el interés de la comunidad, ni impida a los copartícipes utilizarlas según su derecho*". En esa dirección, hemos expresado que usar las cosas de manera que uno de los comuneros posea la totalidad de la misma, excluyendo a los demás, se considera un perjuicio al interés de la comunidad. *Díaz v. Aguayo,* 162 DPR 801 (2004)*; Soto López v. Colón Meléndez*, 143 DPR 282 (1997). Al ser así, mientras persista la comunidad, un "*ex cónyuge tiene derecho al disfrute de los bienes comunes, aun cuando estén controlados y utilizados exclusivamente por el [otro ex cónyuge]. Tal disfrute incluye su derecho a reclamar activamente la coadministración del caudal común, y además reclamar anticipos de su participación en la comunidad.*" S. Torres Peralta*, La ley de sustento de menores y el derecho alimentario en Puerto Rico,* ed. rev. San Juan, Publicaciones STP, Inc., T. I, 2007, págs. 6.51-6.52.

Así pues*,* en *Soto López v. Colón Meléndez, supra,* resolvimos que un ex cónyuge partícipe de una comunidad post ganancial, que no tiene derecho a recibir "alimentos" de su

ex cónyuge por contar con bienes suficientes para vivir, sí tiene derecho como comunero a recibir del ex cónyuge administrador de la comunidad de bienes una suma líquida periódica, la cual se ajustará en el momento en que se liquide la comunidad. Esto, como parte del disfrute de los bienes en comunidad a que todo comunero tiene derecho.

Cónsono con lo anterior, se ha reconocido que cuando uno de los ex cónyuges tiene el control total de la comunidad de bienes post ganancial, el otro comunero tiene derecho a recibir anticipos que, posteriormente, serán descontados de su participación en la liquidación de la comunidad de bienes post ganancial. *Soto López v. Colón Meléndez*, *supra*. *Véase*, además, *Anselmo García v. Sucn. Anselmo García,* 153 DPR 427 (2001) (Sentencia) (Op. de Conformidad, J. Hernández Denton). En otras palabras, "*mientras haya caudal proveniente de la extinta sociedad ganancial, ya en comunidad, radicada o no la demanda de liquidación de bienes, [un] ex cónyuge reclamante tiene derecho a anticipos contra su participación en la comunidad, que está bajo el control del otro ex cónyuge.*" S. Torres Peralta, *op. cit.*, pág. 6.52.

Es menester señalar, además, que mientras exista la comunidad de bienes post ganancial, uno de los ex cónyuges puede pedir al tribunal que -- entre otros remedios -- se nombre un administrador judicial, Art. 322 del Código Civil, 31 LPRA sec. 1277. Asimismo, puede ejercer su derecho de coadministrar los bienes comunes y hasta interponer acciones

de desahucio y reivindicación. *Montalván v. Rodríguez*, *supra*, pág. 422. *Véase*, además, *Soto López v. Colón Meléndez*, *supra*.

Dicho ello, debemos recordar también que ninguno de los comuneros está obligado a permanecer en la comunidad de bienes post ganancial, pudiendo cada uno de ellos exigir su liquidación. Art. 334 del Código Civil, 31 LPRA sec. 1279; *Muñiz Noriega v. Muñoz Bonet, supra; Montalván v. Rodríguez, supra*. Así pues, cuando se pagan las deudas, las cargas y las obligaciones de la extinta sociedad legal de bienes gananciales, se liquidará y pagará el capital de ambos ex cónyuges hasta donde alcance el caudal inventariado. Art. 1317 del Código Civil, 31 LPRA sec. 3692; *Muñiz Noriega v. Muñoz Bonet, supra*.

## III.

De otra parte, y para la correcta disposición de la controversia ante nuestra consideración, conviene recordar también que las obligaciones nacen de la ley, los contratos, los cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992. Aquellas que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor con lo dispuesto en el mismo. Art. 1044 del Código Civil, 31 LPRA sec. 2994; *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713 (2001); *López v. González*, 163 DPR 275 (2004); *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610 (1997).

Como se sabe, en nuestro ordenamiento jurídico, las partes que perfeccionan un contrato pueden establecer en este los pactos, las cláusulas y las condiciones que tengan por convenientes, siempre que las mismas no sean contrarias a las leyes, la moral y el orden público. Art. 1207 del Código Civil, 31 LPRA sec. 3372; *Martínez Marrero v. González Droz*, 180 DPR 579 (2011); *López v. González*, *supra*. *S.L.G. Irizarry v. S.L.G. García*, *supra*. Por ser así, una vez perfeccionado un contrato en que medie el consentimiento de las partes, estas se obligan desde ese momento, no solo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil,31 LPRA sec. 3375; *Burgos López v. Condado Plaza*, 193 DPR 1 (2015); *BPPR v. Sucn. Talavera*, 174 DPR 686 (2008); *Jarra Corp. v. Axxis Corp.*, 155 DPR 764 (2001).

Tales obligaciones, pueden generar derechos reales o personales. Los derechos reales son aquellos que conceden un poder inmediato del titular sobre una cosa. Por el contrario, los derechos personales o de crédito son aquellos que atribuyen a su titular un poder que le permite dirigirse a otra persona y reclamar de ella una acción o una omisión. **Un derecho personal, por ejemplo, sería el derecho del acreedor a reclamar una suma de dinero.** L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 6ta ed., Madrid, Ed. Aranzandi, Vol. I, 2007, pág. 75.

Cuando las partes se obligan, el deudor queda atado al cumplimiento de la obligación desde el momento que asume el deber de cumplirla; por lo tanto, es necesario que realice la conducta prometida para liberarse de esa carga. J.R. Vélez Torres, *Derecho de Obligaciones, curso de derecho civil*, 2da ed. rev., San Juan, 1997, pág. 257. Ahora bien, no siempre el deudor cumple con su obligación. En ese caso, "*el Derecho no puede detenerse de su función rectora de la conducta del hombre en franca convivencia y, por ello, provee normas que reglarán, desde entonces, la relación jurídica afectada por el incumplimiento*". *Íd.*

> Normalmente, la obligación configura un excelente ejercicio de cooperación entre dos o más personas, porque los contratantes persiguen un fin beneficioso a los intereses de ambos. Pero, la estructura de la relación jurídica coloca a una parte en condición de sujeción frente a las pretensiones de otra y esa dinámica no siempre propicia el cumplimiento. De manera que el acreedor, *parte activa*, en virtud de la obligación pretende o espera que el deudor, *parte pasiva*, realice una conducta, la prestación prevista que le beneficiaría. Si el deudor no actúa en la forma esperada por el acreedor, ni tampoco se le puede compeler físicamente a ello, se frustran las pretensiones de éste, sobreviniendo la correspondiente lesión o perjuicio económico. *Íd.* pág. 268.

Así pues, cuando el deudor no cumple con su obligación, el Derecho orienta la mirada del acreedor hacia el patrimonio del deudor. *Íd.* pág. 268. "*De este modo, logra restablecer el balance de intereses perturbado por el incumplimiento. Por eso, el Artículo 1811 [del Código Civil], 31 LPRA sec. 5171, dispone que del cumplimiento de las obligaciones*

*responde el deudor con todos sus bienes presentes y futuros".*
*Íd.*

IV.

En lo pertinente a la controversia que nos ocupa, es menester señalar, además, que las estipulaciones de divorcio se consideran un contrato de transacción judicial y el mecanismo de ejecución de sentencia es el adecuado para hacerlas valer. *Igaravidez v. Ricci*, 147 DPR 1(1998); *Pabón Rodríguez y Díaz López*, *Ex parte*, 132 DPR 898 (1992); *Magee v. Alberro*, 126 DPR 228 (1990); *Negrón Rivera y Bonilla, Ex parte,* 120 DPR 61 (1987). Ahora bien, para que una estipulación se considere una transacción judicial, esta debe cumplir con uno de los elementos esenciales de un contrato de transacción, a saber, que las partes pongan término a un litigio mediante concesiones recíprocas. *Mun. San Juan v. Prof. Research*, 171 DPR 219 (2007). Ello, pues un contrato de transacción es un "*acuerdo mediante el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen fin a uno ya comenzado, con el propósito de evitar los pesares que conllevaría un litigio".* *Mun. San Juan v. Prof. Research*, *supra*, pág. 238; *López Tristani v. Maldonado*, 168 DPR 838, 846 (2006). *Véanse*, además, *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193 (2006); *Igaravidez v. Ricci*, *supra*, pág. 5. Es decir, mediante las estipulaciones las partes ponen fin a una acción e incorporan unos acuerdos al proceso judicial en curso. *Nater v. Ramos*, 162 DPR 616 (2004); *Igaravidez v. Ricci, supra*.

De otra parte, **"reiteradamente hemos resuelto que una estipulación suscrita por las partes y aceptada por el tribunal, que finaliza un pleito o […]** <u>un incidente dentro del pleito</u>,**[también] constituye un contrato de transacción que las obliga"**. *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61 (1987) (en el contexto de una estipulación de pensión alimentaria dentro de un pleito de divorcio).[4] Por ser así, como regla general, el Tribunal aceptará los convenios y las estipulaciones a las cuales las partes lleguen para finalizar un pleito, y este acuerdo tendrá efecto de cosa juzgada entre las partes. *Magee v. Alberro*, 126 DPR 228 (1990); *Negrón Rivera y Bonilla, Ex Parte, supra; Canino v. Bellaflores*, 78 DPR 778 (1955); *Igaravidez v. Ricci, supra*.

En esa dirección, en el contexto del derecho de familia, hemos resuelto que, *"cuando una de las partes incumple […] con una estipulación relativa a la liquidación de bienes, el mecanismo que nuestro ordenamiento jurídico dispone para que lo convenido se lleve a efecto es el procedimiento de ejecución de sentencia"*. *Igaravidez v. Ricci, supra*,

---

[4] *Véase*, además, *Lausell Marxuach v. Díaz de Yanes*, 103 DPR 533 (1975) en el que este Tribunal consideró que cierta estipulación dentro de un pleito de divorcio por trato cruel -- en la que se reconocía que determinada residencia pertenecía a la sociedad de gananciales; se acordaba que su administración recayese en la recurrida; que los alquileres se dividirían por mitad; y que el efectuarse la liquidación final de la sociedad de gananciales le correspondería a cada parte su cincuenta por ciento de la vivienda -- era cosa juzgada para los efectos de un pleito posterior de sentencia declaratoria en la que se atacó la mencionada estipulación. Así pues, según este Tribunal en *Ex parte Negrón Rivera y Bonilla*, 120 DPR 61 (1987), se le dio el efecto de contrato de transacción (a pesar de que dicha estipulación no puso fin al pleito de divorcio, cuya sentencia recayó después de que el Tribunal acogiera la estipulación).

págs. 7-8. *Véanse*, además, *Pabón Rodríguez y Díaz López, supra*; *Magee v. Alberro*, *supra*. Tal es el caso de autos.

Es, pues, a la luz de la normativa antes expuesta que procedemos a disponer de las controversias ante nuestra consideración.

V.

Como mencionamos anteriormente, en el presente caso, como resultado de un proceso de divorcio y con el propósito de ponerle fin al presente pleito, el señor Pastrana Santiago y la señora Betancourt González llegaron a ciertas estipulaciones. En lo pertinente al caso que nos ocupa, las mencionadas partes acordaron -- entre otras cosas -- que el señor Pastrana Santiago le pagaría a la señora Betancourt González una cantidad mensual de $2,500.00 por concepto de anticipos de su participación final en la referida comunidad de bienes post ganancial. Las sumas pagadas serían descontadas de la participación final de esta al momento de la división de la comunidad de bienes post ganancial.

No obstante, tras el incumplimiento por parte del señor Pastrana Santiago con el acuerdo al que llegó con la señora Betancourt González, el Tribunal de Primera Instancia con el fin de satisfacer la deuda acumulada, y dentro de un pleito de ejecución de sentencia, ordenó la venta en pública subasta del cincuenta por ciento (50%) de la participación de este en cierta propiedad perteneciente a la comunidad de bienes post ganancial ubicada en la urbanización Paseo Real, en San

Juan, P.R. El foro primario resolvió, además, que, de no ser suficiente con la referida venta, se procedería a vender en pública subasta el cincuenta por ciento (50%) de la participación de este en una propiedad ubicada en la urbanización Solimar en Luquillo, P.R., que también pertenecía a la comunidad de bienes post ganancial. Tal proceder motivó a que el señor Pastrana Santiago acudiera en revisión ante el Tribunal de Apelaciones. El foro apelativo intermedio, luego de evaluar los planteamientos de las partes, revocó el dictamen recurrido y como resultado de ello ordenó que el foro primario, dentro de un pleito de divorcio, valorara la totalidad de las propiedades en la comunidad de bienes post ganancial y, una vez valoradas, ordenara la venta en pública subasta del cien por ciento (100%) de la misma, para luego dividir las ganancias en partes iguales. Al igual que el Tribunal de Primera Instancia, el Tribunal de Apelaciones erró en su proceder.

Y es que, ordenar la venta de los inmuebles en cuestión pertenecientes a la comunidad de bienes post ganancial entre el señor Pastrana Santiago y la señora Betancourt González, tal como lo hicieron el foro apelativo intermedio y el foro primario, además de no ser conforme a derecho, resultaría contrario a la normativa respecto a la comunidad de bienes post ganancial. Recordemos que, en una comunidad de bienes post ganancial, sus comuneros ostentan una cuota abstracta sobre la masa, y no una cuota sobre cada uno de los bienes.

Es decir, los comuneros no tienen una cuota sobre cada bien determinado, sino que poseen una cuota independiente, alienable y homogénea sobre la masa patrimonial con el derecho a intervenir en la administración de los bienes comunes y a pedir su división; por lo que, -- no habiendose efectuado la referida división o liquidación de la comunidad de bienes post ganancial en la causa de epígrafe -- no podían, el Tribunal de Primera Instancia ni el Tribunal de Apelaciones, ordenar la venta en pública subasta de una participación en un bien en particular.

Así pues, y en vista de que los bienes que en el presente caso se pretenden ejecutar pertenecen en estado indiviso a la comunidad de bienes post ganancial, es necesario que -- previo a ordenar su venta -- se divida la misma en su totalidad en un pleito de liquidación de comunidad de bienes post ganancial para que, posteriormente, puedan adjudicarse las participaciones correspondientes; **y sobre eso ya había un pleito pendiente en el Tribunal de Primera Instancia.** Ejecutar dichos bienes previo a la liquidación de la comunidad de bienes post ganancial sería una actuación prematura y contraria a los postulados más básicos de la normativa aplicable al tema que nos ocupa.

Ahora bien, no empece lo antes dicho, y como ya hemos visto, la señora Betancourt Pastrana no se encuentra desprovista de remedios para hacer valer sus derechos. Ello, pues el señor Pastrana Santiago, a través de las estipulaciones que llegaron las partes -- las cuales

constituyen un contrato entre ellos y fueron aceptadas por el Tribunal-- **se obligó personalmente** a satisfacer la suma de $2,500.00 mensuales a favor de la señora Betancourt González, como anticipo de la participación de esta en la comunidad de bienes post ganancial, ya que este mantiene el control total sobre los referidos bienes. Así pues, le corresponde al Tribunal de Primera Instancia emitir las órdenes necesarias -- como podría ser realizar un inventario de los bienes privativos del señor Pastrana Santiago y tomar las medidas que de ordinario se utilizan en los procedimientos de ejecución de sentencia (tales como anotaciones preventivas, embargos, fianzas, entre otras) -- para que este cumpla con **la obligación personal** que asumió mediante la estipulación en controversia. Las sumas que satisfaga el señor Pastrana Santiago constituirán un crédito a su favor y serán descontadas de la participación de la señora Betancourt González al momento de la liquidación de la comunidad de bienes post ganancial.

## VI.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones y se deja sin efecto la orden de valorar y posteriormente vender determinados bienes de la comunidad de bienes post ganancial compuesta por el señor Pastrana Santiago y la señora Betancourt González. En consecuencia, se devuelve el caso al foro de primera instancia para la continuación de los trámites a tenor con lo aquí dispuesto.

Se dictará sentencia de conformidad.


                              Ángel Colón Pérez
                               Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Amarilis Betancourt González

    Peticionaria

      v.

Dwight Pastrana Santiago         AC-2015-0071

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 23 de abril de 2018.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca el dictamen emitido por el Tribunal de Apelaciones en el presente caso. En consecuencia, se devuelve el mismo al Tribunal de Primera Instancia para la continuación de los trámites a tenor con lo aquí dispuesto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco hace constar la siguiente expresión:

> "La Jueza Asociada señora Pabón Charneco concurre con el resultado, pues este Tribunal continúa empleando la figura del "contrato de transacción" mecánicamente. Esta vez las utiliza para las estipulaciones en casos de divorcio por causales distintas a las de consentimiento mutuo, en la que sí hemos examinado a profundidad su aplicación".

La Jueza Presidenta Oronoz Rodríguez no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo