ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| IRMA IVETTE MARTÍNEZ PÉREZ<br><br>Apelados<br><br>v.<br><br>CARLOS MANUEL SANTOS SERRANO<br><br>Apelante | TA2025AP00009 | Apelación procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.: VA2020RF00018<br><br>Sobre: Pensión Alimenticia Excónyuges |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 31 de julio de 2025.

Comparece ante nos la parte apelante, Irma I. Martínez Pérez (en adelante, Martínez Pérez o parte apelante), y nos solicita que revisemos la *Resolución,* emitida y notificada el 16 de mayo de 2025, por el Tribunal de Primera Instancia, Sala de Caguas. Mediante esta, el Foro Primario relevó del pago de la pensión alimentaria de excónyuge a la parte apelada, Carlos M. Santos Serrano (en adelante, Santos Serrano o parte apelada).

Por los fundamentos que expondremos a continuación *confirmamos* la *Resolución* apelada.

## I.

Las partes de epígrafe se divorciaron por la causal de ruptura irreparable. Luego, el 16 de diciembre de 2020, la parte apelante presentó una *Demanda* en contra de Santos Serrano.[1] En esta, Martínez Pérez indicó que, al divorciarse, estos acordaron extrajudicialmente que la parte apelada le facilitaría una pensión

---

[1] SUMAC del Tribunal de Primera Instancia, Entrada Núm. 1.

de excónyuge, la cual ascendía aproximadamente a cinco mil dólares ($5,000.00) mensuales. Adujo que Santos Serrano redujo la pensión acordada a tres mil dólares ($3,000.00), por lo que solicitó que se le ordenara a la parte apelada cumplir con lo pactado. Luego de varios incidentes procesales, el Foro Primario estableció una pensión provisional de tres mil quinientos dólares ($3,500.00), la cual fue confirmada por este Foro Apelativo en el caso núm. KLCE202201075.

Así las cosas, la parte apelante adujo que, a partir del 1 de junio de 2024, la parte apelada redujo el pago de la pensión a mil dólares ($1,000.00) mensuales, la cual no había sido aprobada por el Foro *a quo*. Luego, el 3 de junio de 2024, Santos Serrano presentó una *Moción sobre Rebaja de Pensión de Excónyuge*.[2] En esta, la parte apelada solicitó que se ajustara la fijación de la pensión a su situación económica actual, debido a que se retiró de su empleo y su ingreso disminuyó a cuatro mil trescientos sesenta y cuatro dólares ($4,364.00), el cual estaba compuesto por la pensión del seguro social y de su previo empleo.

Luego de varios incidentes procesales no pertinentes a la controversia ante nos, el 15 de mayo de 2025, el Foro de Instancia celebró una vista evidenciaria para dilucidar la referida rebaja de la pensión. En esta, testificó Martínez Pérez y Santos Serrano. Escuchados los testimonios y evaluada la prueba documental presentada, el 16 de mayo de 2025, el Foro Primario emitió la *Resolución* aquí se apelada.

Surge del dictamen que la parte apelante recibía mil quinientos dólares ($1,500.00) por concepto del seguro social, y ciento cincuenta y nueve dólares ($159.00) por el Programa de

---

[2] Apéndice de apelación, Entrada Núm. 177.

Asistencia Nutricional (en adelante, PAN). Igualmente, indicó que los gastos mensuales de Martínez Pérez ascendían a cuatro mil ochocientos cinco dólares con tres centavos ($4,805.03).

Por otro lado, el Foro Primario expresó que la parte apelada tenía un ingreso de cuatro mil cuatrocientos sesenta y seis dólares con cincuenta y un centavos ($4,466.51), y que sus gastos mensuales ascendían a tres mil cuatrocientos cuarenta y siete dólares con sesenta y cinco centavos ($3,447.65). No obstante, el Foro Primario indicó que Santos Serrano adeudaba a la parte apelante, por concepto de la pensión de excónyuge que no había pagado, treinta y ocho mil cuatrocientos trece dólares ($38,413.00).

En la referida determinación, el Foro Primario concluyó que, a pesar de que la parte apelante demostró tener una necesidad económica, esta no probó que la parte apelada tenía la capacidad económica para sufragar la pensión de excónyuge solicitada. Por tanto, el Foro *a quo* relevó a la parte apelada de la aludida obligación. No obstante, le ordenó a Santos Serrano saldar la deuda de treinta y ocho mil cuatrocientos trece dólares ($38,413.00), y le impuso un plan de pago a razón de mil dólares ($1,000.00) mensuales.

Inconforme, el 16 de junio de 2025, la parte apelante presentó el recurso de epígrafe, en el cual hace lo siguientes señalamientos de error:

> **Primero:** Erró el TPI en la apreciación de la prueba y abusó de su discreción al determinar que el apelado no posee ingresos para sufragar pensión de excónyuge a la que se comprometió durante el divorcio.
> **Segundo:** Erró el TPI y abusó de su discreción en violación a la cluasula [sic] del debido proceso de ley al fijar un plan de pago sobre la deuda de pensión alimenticia que posee el apelado.

Posteriormente, el 9 de septiembre de 2025, la parte apelada presentó su *Alegato en Oposición a Apelación.* Así, con el beneficio de la comparecencia de ambas partes, y a la luz del derecho aplicable, procedemos a expresarnos.

## II.

## A.

Las pensiones alimentarias de excónyuges están revestidas del mayor interés público, debido a que estas surgen del derecho fundamental de todo ser humano a existir y desarrollar plenamente su personalidad. Correa Márquez v. Julia Rodríguez, 198 DPR 315, 326 (2017); Cortés Pagán v. González Colón, 184 DPR 807, 814 (2012); González v. Suárez Milán, 131 DPR 296, 301 (1992). Es por lo que el Artículo 466 del Código Civil de 2020, según enmendado, 31 LPRA sec. 6813, consagra lo relativo a las pensiones alimentarias entre excónyuges. El referido artículo dispone lo siguiente:

> El tribunal puede asignar al excónyuge que no cuenta con medios suficientes para vivir una pensión alimentaria que provenga de los ingresos o de los bienes del otro excónyuge, por un plazo determinado o hasta que el alimentista pueda valerse por sí mismo o adquiera medios adecuados y suficientes para su propio sustento.
>
> Para fijar la cuantía de la pensión alimentaria, el tribunal puede considerar, entre otros factores pertinentes, las siguientes circunstancias respecto a ambos excónyuges:
>
> (a)  los acuerdos que hayan adoptado sobre el particular;
>
> (b)  la edad y el estado de salud física y mental;
>
> (c)  la preparación académica, vocacional o profesional y las probabilidades de acceso a un empleo;
>
> (d)  las responsabilidades que conservan sobre el cuido de otros miembros de la familia;
>
> (e)  la colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge;

(f)  la duración del matrimonio y de la convivencia conyugal;

**(g)  el caudal y medios económicos y las necesidades de cada cónyuge; y**

(h)  cualquier otro factor que considere apropiado según las circunstancias del caso.

La resolución del tribunal debe establecer el modo de pago y el plazo de vigencia de la pensión alimentaria. Si no se establece un plazo determinado, la pensión estará vigente mientras no se revoque por el tribunal, a menos que se extinga por las causas que admite este Código."

31 LPRA sec. 6813. (Énfasis nuestro.).

De este modo, esta obligación entre excónyuges tiene su fundamento en el deber jurídico de prestarse mutuo socorro cuando no cuenten con medios suficientes para vivir. Soto López v. Colón, 143 DPR 282, 288 (1997). Asimismo, el derecho a reclamar una pensión alimentaria post divorcio está supeditado a la existencia de los criterios de necesidad del cónyuge reclamante y de capacidad económica del excónyuge a quien se le reclama. Correa Márquez v. Julia Rodríguez, *supra*, pág. 326; Morales v. Jaime, 166 DPR 282, 311 (2005); Cantellops v. Cautiño Bird, 146 DPR 791, 806 (1998).  No obstante, esta necesidad debe surgir como corolario a la ruptura conyugal. Morales v. Jaime, *supra*, pág. 301. Por ello, "sólo se requiere presentar cualquier prueba pertinente tendente a establecer que no se cuenta con dichos medios suficientes para vivir y no necesariamente que se es anciano, incapacitado o incapaz de trabajar". Morales v. Jaime, *supra*, págs. 311-312. Así, pues, establecidos los criterios de necesidad, capacidad económica, y que la carencia económica haya surgido como consecuencia del divorcio, procede el derecho a la pensión. Correa Márquez v. Julia Rodríguez, *supra,* pág. 326.

Ahora bien, debido a que las circunstancias pueden cambiar en el transcurso del tiempo, los dictámenes sobre pensiones no prescribirán, siempre que estén relacionados, en cuanto a la causalidad, al divorcio. Suria v. Fernández Negrón, 101 DPR 316, 320 (1981). Igualmente, las pensiones alimentarias entre excónyuges están sujetos a ser modificadas, según varíe la situación de necesidad del alimentista o la capacidad económica del alimentante. Correa Márquez v. Julia Rodríguez, *supra*, pág. 327. Por lo cual, nuestro ordenamiento jurídico provee para que, de haber un cambio sustancial en las circunstancias económicas del alimentante, se modifique la pensión establecida. Conforme a ello, el Artículo 467 del Código Civil, 31 LPRA sec. 6814, dispone lo siguiente:

> A petición de parte, el tribunal puede modificar o revocar la pensión alimentaria antes de su vencimiento, si surgen cambios significativos o extraordinarios en la situación personal o económica de cualquiera de los excónyuges.

De este modo, queda al arbitrio de la discreción del Tribunal de Primera Instancia, otorgar la pensión solicitada, tomando en consideración los factores de la necesidad del excónyuge que la reclama y la capacidad económica del otro para cumplir con la referida obligación. Morales v. Jaime, *supra*, pág. 311. Debido a que estas circunstancias pudiesen cambiar, los tribunales siempre conservan jurisdicción sobre el asunto, por lo que los pleitos relativos a las pensiones de excónyuges no constituirán cosa juzgada y estarán sujetos a modificaciones. Cortés Pagán v. González Colón, *supra*, págs. 814-815.

**B.**

La *Resolución* objeto de esta apelación, como cualquier Resolución o Sentencia, están revestidas de una presunción de

corrección. <u>Vargas Cobián v. González</u>, 149 DPR 859, 866 (1999). Como corolario, es norma reiterada que los foros apelativos no debemos intervenir con las determinaciones de hechos de los tribunales de primera instancia, su apreciación sobre la credibilidad de los testigos y el valor probatorio conferido a la prueba presentada en sala, pues solo contamos con "récords mudos e inexpresivos". <u>Dávila Nieves v. Meléndez Marín</u>, 187 DPR 750, 771 (2013); <u>S.L.G. Rivera Carrasquillo v. A.A.A.</u>, 177 DPR 345, 356 (2009).

Esta deferencia corresponde a que es el foro de instancia el que tiene la oportunidad de recibir y apreciar toda la prueba oral presentada y está en mejor posición para evaluar el comportamiento y adjudicar la credibilidad de los testigos. <u>Muñiz Noriega v. Muñiz Bonet</u>, 177 DPR 967, 987 (2010); <u>S.L.G. Rivera Carrasquillo v. A.A.A.</u> *supra*, pág. 356. Asimismo, en <u>Rivera Menéndez v. Action Service</u>, 185 DPR 431, 444 (2012), nuestro Máximo Foro expresó lo siguiente:

> [C]uando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho. De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de esa prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia.

Conforme a ello, y en lo pertinente, la Regla 42.2 de las de Procedimiento Civil, 32 LPRA Ap. V (2009), R. 42.2, establece que: "…[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos". Por lo tanto, "[s]ólo se podrá intervenir con estas conclusiones cuando la apreciación de la prueba no represente el balance más

racional, justiciero y jurídico de la totalidad de la prueba". González Hernández v. González Hernández, 181 DPR 746, 777 (2011).

A la luz de lo anterior, un tribunal apelativo está impedido de sustituir por sus propias apreciaciones las determinaciones de hechos del Foro Primario, fundamentándose en un examen del expediente presentado para su escrutinio. Dávila Nieves v. Meléndez Marín, *supra*, pág. 770. Por tanto, para que un foro revisor revoque las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, la parte que las cuestione deberá demostrar y fundamentar que medió pasión, prejuicio, parcialidad o error manifiesto por parte del juzgador. SLG Rivera Carrasquillo v. A.A.A., *supra,* pág. 356. Véase, además*,* Flores v. Soc. de Gananciales, 146 DPR 45, 49 (1998). Dicho de otra manera, en ausencia de prejuicio, parcialidad, error manifiesto o abuso de discreción, de ordinario, el pronunciamiento del foro primario será sostenido en toda su extensión por el tribunal intermedio. Sucn. Rosado v. Acevedo Marrero, 196 DPR 884, 917 (2016); Trans-Oceanic Life Ins. v. Oracle Corp., 184 DPR 689, 709 (2012).

Así, debido a que la determinación judicial esta revestida de una presunción de corrección, la parte que la impugna ante un foro apelativo tiene el deber de poner en posición a dicho foro para que este pueda conceder el remedio solicitado. Moran v. Marti, 165 DPR 356, 366 (2005). De esta forma, la parte promovente tiene la responsabilidad de acompañar la prueba necesaria para demostrar que el foro recurrido cometió el error alegado o que abuso de su discreción. Íd. Conforme a ello, la Regla 19 de nuestro Reglamento dispone:

> (A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba

testifical o con la apreciación errónea de esta por parte del tribunal apelado, deberá reproducir la prueba oral [...]

Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. 37, 215 DPR ___ (2025).

Igualmente, cuando se trata de una parte que plantea la comisión de un error en la apreciación o la suficiencia de la prueba, nuestro Tribunal Supremo ha expresado lo siguiente:

[S]i la parte apelante no reproduce la prueba oral el tribunal apelativo no podrá cumplir cabalmente su función revisora. Esto, pues sin la reproducción de la prueba oral, los tribunales apelativos no podrán evaluar si las determinaciones de hechos del juzgador se basaron en pasión, perjuicio, parcialidad o error manifiesto.

Rivera Lamberty v. Rodríguez Amador, 205 DPR 194, 200-201 (2020).

De esta forma, ante la falta de la transcripción de la prueba oral, nuestra función revisora recae sobre la comisión de algún error de derecho, de este desprenderse del expediente apelativo. Santos Green v. Cruz, 100 DPR 9, 15 (1971). De lo contrario, procederá la desestimación del recurso o la confirmación de la determinación apelada.

### III.

En el caso ante nos, la parte apelante alegó que el Tribunal de Primera Instancia erró al determinar que la parte apelada no tenía la capacidad económica para sufragar la pensión de excónyuge solicitada por Martínez Pérez. Asimismo, adujo que el Foro Primario incidió al fijar un plan de pago para que el apelado pudiese satisfacer lo adeudado en pensiones pasadas a la parte apelante. Por estar relacionados entre sí, procedemos a discutir los errores señalados en conjunto.

Surge del expediente que la parte apelante estuvo recibiendo una pensión de excónyuge por parte de la parte

apelada luego del divorcio. No obstante, a partir del mes de junio de 2024, Santos Serrano señaló que tuvo una reducción significativa en sus ingresos al retirarse de su empleo, por lo que solicitó una rebaja de la pensión establecida. Evaluada la prueba presentada por las partes y los testimonios de estos en la vista evidenciaria, el Foro Primario concluyó que la parte apelante demostró que tenía una necesidad económica para justificar la pensión. Sin embargo, el Foro *a quo* determinó que no probó que la parte apelada tuviese la capacidad económica para sufragar la misma. Por ello, el Foro apelado relevó a Santos Serrano de su obligación, e indicó que este debía saldar lo adeudado a la parte apelante por las pensiones que no había pagado, a razón de mil dólares ($1,000.00) mensuales.

Tal cual esbozado en el resumen doctrinal, es norma reiterada que los dictámenes relacionados a las pensiones entre excónyuges están sujetos a ser modificadas por el Tribunal de Primera Instancia cuando haya un cambio sustancial en las circunstancias económicas de alguna de las partes. Para ello, el Foro Primario tendrá discreción para otorgar la pensión solicitada, luego de tomar en consideración una variedad de factores. Entre estos, es necesario que se pruebe que la parte que solicita la referida pensión tiene una necesidad económica que justifica la concesión de esta, y que la parte a quien se le reclama tiene la capacidad económica de sufragarla.

Ahora bien, es norma recurrente en nuestro ordenamiento jurídico que las determinaciones de hechos del Tribunal de Primera Instancia gozan de una presunción de corrección. Para derrotarlas, la parte que las impugne debe demostrar que el Foro *a quo* incurrió en prejuicio, pasión, parcialidad o error manifiesto. Conforme a la jurisprudencia y el Reglamento de este Foro

Apelativo, la parte debe acompañar la prueba necesaria que demuestre que el Foro de Instancia abusó de su discreción, así como que deberá reproducir la prueba oral. En ausencia de lo anterior, nuestra función revisora se verá limitada a evaluar la comisión de algún error de derecho que surja del expediente.

Tras evaluar la prueba presentada en autos, nos vemos forzados a coincidir con la determinación del Tribunal de Primera Instancia. Del expediente surge que la parte apelante presentó prueba que demostró que tenía una necesidad económica que surgió como consecuencia del divorcio. No obstante, no probó que la parte apelada tuviese los recursos económicos para continuar cumpliendo con el pago de pensión establecida por el Foro apelado. Es decir, Martínez Pérez no demostró que la parte apelada tuviese ingresos adicionales a los alegados por este. Por otro lado, la parte apelada presentó prueba que reflejó que tuvo una reducción de ingresos sustancial luego de retirarse de su empleo, lo cual le imposibilitó continuar sufragando la referida pensión. Por tanto, la parte apelada demostró que hubo un cambio significativo en sus circunstancias económicas que justificaron el relevo de la pensión de excónyuge.

Al cuestionar en su recurso la apreciación de la prueba del Foro Primario, era responsabilidad de la parte apelante poner a este Foro apelativo en posición para derrotar la presunción de corrección que acompaña la misma. No obstante, Martínez Pérez no reprodujo ante nos la transcripción de la prueba oral, privando a este foro de evaluar si las determinaciones de hechos del Foro *a quo* son producto de un abuso de discreción. De este modo, al evaluar las *Resolución* apelada, es nuestra apreciación que el Tribunal de Primera Instancia no incurrió en un error de derecho al relevar a la parte apelada de su obligación de prestar la pensión

de excónyuge, así como imponerle un plan de pago para sufragar lo adeudado a la parte apelante.

Así, luego de evaluado el recurso que obra ante nos y el derecho aplicable, en ausencia de abuso de discreción, perjuicio o error inexplicable, debemos darles deferencia a las determinaciones hechos por el Tribunal de Primera Instancia. Por lo cual, confirmamos la *Resolución* apelada.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones